NOT DESIGNATED FOR PUBLICATION

Nos. 112,348
112,349

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PHILLIP DELFELDER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed November 6, 2015. Affirmed.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., PIERRON and ARNOLD-BURGER, JJ.

*Per Curiam*: Phillip M. Delfelder appeals the revocation of his probation and the failure to impose intermediate sanctions before ordering him to serve his underlying prison sentence.

In 2013, Delfelder pled guilty in two separate cases. In 13CR2264, he pled guilty to burglary, criminal damage to property, and theft. In 13CR3141, he pled guilty to forgery. He was sentenced on January 15, 2014. In 13CR2264, the district court gave Delfelder an underlying sentence of 23 months' imprisonment but granted probation for

1

24 months. In 13CR3141, the district court sentenced Delfelder to an underlying sentence of 15 months' imprisonment, to run consecutive to 13CR2264 but again granted 24 months' probation. The court ordered Delfelder to spend 60 days in the county jail as a condition of his probation.

Prior to the district court's imposition of sentence, the parties discussed Delfelder's past drug use and his bold claim that he would be clean if the court ordered a drug test on the spot. The court called Delfelder's bluff and ordered an immediate urinalysis. Delfelder tested positive for having methamphetamine in his system. When the district court gave him the opportunity for allocution, he used the occasion to continue to claim he was drug free and that someone must have put something in his drink. In light of the evidence, the district judge stressed his expectations for Delfelder while on probation:

> "[THE COURT:] I want also to put you on notice, Mr. Delfelder, that the expectation for probation is that there'll be no other violations. In other words, it's zero tolerance for any violations with no exceptions being granted. And what that simply means is that at the end of 60 days, you're going to be released on probation, and the probationary term is going to be for two years. If there's any violation during that two-year period, then there's a 99.9 percent probability that you'll go to prison. Any question about that?
>
> "THE DEFENDANT: No, sir.
>
> "THE COURT: And let me say with as much emphasis as I can, Mr. Delfelder, that I'm not imposing that expectation of zero tolerance with any intent to be threatening, or intimidating, or any other bad motivation. Rather, it's intended to just give you notice of the fact that the expectation for you is pretty darn high. People live down their probation conditions every day. There's no reason you can't do likewise.
>
> "Part of the reason for imposing that expectation also is to give you an incentive to comply. Every time you come across somebody that is drinking, or doping, or whatever and you're encouraged or persuaded by them to engage in that activity, just keep the thought in mind, if you do, there's a good chance you're going to go to prison. So just keep that at the forefront of your thinking at all times. If you do that, there should be no difficulty."

Despite the court's warning, Delfelder violated the conditions of his probation.

On June 5, 2014, the State filed a warrant alleging Delfelder had violated his probation in seven ways: (1) failing to pay court costs; (2) testing positive for methamphetamines in early March 2014; (3) testing positive for methamphetamines in late May 2014; (4) committing the offenses of driving while suspended, failing to signal, tag violation, and no proof of insurance; (5) failing to report in April 2014; (6) failing to enter and complete drug and alcohol treatment; and (7) failing to perform community service work. At the revocation hearing, Delfelder admitted to the probation violations and waived his right to an evidentiary hearing. In a somewhat lengthy diatribe, the district court questioned Delfelder concerning if he had used drugs in front of his children and explained how most prisoners have drug and/or alcohol problems. The court revoked Delfelder's probation and ordered him to serve his underlying sentence. The judge's verbalized rationale for revoking Delfelder's probation was limited to the following:

> "Well, Mr. Delfelder, you've had eight DUI's. You've had more than ample opportunity to take care of your own business and take care of yourself. And, when I say zero tolerance, no exceptions, that's exactly what I mean.
> "I don't see any valid circumstances in your case that would allow for an exception to be made. If I make an exception for you, the first thing that happens is, you go back over to the county jail and you tell all those guys, I went to Burgess, and he had me on zero tolerance, no exceptions, he made an exception. So the next guy that comes over, or the next woman comes over, Well, you made an exception for that guy, what about me? Pretty soon the exception follows the rule, and then there is no reason to even have a rule."

However, the district court's journal entry indicated that Delfelder's probation was revoked pursuant to K.S.A. 2013 Supp. 22-3716(c)(8) or (c)(9) because Delfelder's

3

welfare would not be served by intermediate sanctions and Delfelder had committed a new crime.

On appeal, Delfelder argues the district court's zero tolerance policy was an abuse of discretion and the court should have imposed the intermediate sanctions under K.S.A. 2014 Supp. 22-3716.

The intermediate sanction provisions now claimed by Delfelder are retroactive and applicable to him. K.S.A. 2014 Supp. 22-3716(c)(12) expressly provides: "The violation sanctions provided in this subsection shall apply to any violation of conditions of release or assignment or a nonprison sanction occurring on and after July 1, 2013, regardless of when the offender was sentenced for the original crime or committed the original crime for which sentenced." See *State v. Kurtz*, 51 Kan. App. 2d 50, 56, 340 P.3d 509 (2014) ("The legislature has therefore clarified that the date that controls the law that applies to the imposition of sanctions for violating probation is the law that existed when a defendant violated probation, not the law that existed when the defendant committed the underlying crime as this court held in [*State v.*] *Dreier* [29 Kan. App. 2d 958, 34 P. 3d 480 (2001)], nor the law in effect when the probation hearing occurred."), *rev. denied* 302 Kan. ___ (September 23, 2015). The events of Delfelder's probation violations occurred in 2014. Consequently, the applicability date of July 1, 2013, for imposing intermediate sanctions has been met.

However, this issue was not raised at the probation revocation hearing. Delfelder argues for the first time on appeal that the district court erred by ordering him to serve his underlying sentence without first imposing an intermediate sanction under K.S.A. 2014 Supp. 22-3716(c) and in essence sticking with the court's zero tolerance position. Neither party mentioned the graduated sanction framework at the revocation hearing in district court.

4

As a general rule, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are several exceptions to this general rule, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (cautioning future litigants to comply with rule).

In *State v. Klima*, No. 110,660, 2014 WL 3843473, at *2-3 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (August 10, 2015), the court found that a challenge to a district court's purported failure to implement the graduated sanction framework in K.S.A. 2013 Supp. 22-3716(c) was not properly raised on appeal because it was not first presented to the district court. In that case, Klima did not acknowledge his failure to raise the argument below, nor did he assert any of the exceptions to the general rule preventing him from raising the issue for the first time on appeal. In light of the warning in *Williams*, 298 Kan. at 1085-86, the court declined to address the issue on the merits. *Klima*, 2014 WL 3843473, at *2-3.

Here, Delfelder does not acknowledge that this court generally will not review issues raised for the first time on appeal or state whether any of the exceptions to that rule apply in his case.

Since Delfelder did not raise the key issues at the trial level, we will not review those issues. With this decision it is also unnecessary to review a number of other issues.

Affirmed.